STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 129-11-15 Vtec |

| | |
|---|---|
| Stanion NOV | DECISION ON THE MERITS |

**Decision in On-the-Record Appeal**

In this on-the-record proceeding, Lessa Stanion, Ian Stanion, and Elle Stanion (the Stanions) appeal a decision by the Town of Montgomery Development Review Board (DRB) finding that a fence installed by the Stanions on the Stanions' property violated provisions of the Montgomery Zoning Regulations (the Regulations).

The Town of Montgomery (the Town) is represented by Charles Merriman, Esq.  The Stanions were previously represented in this matter by Joseph Cahill, Esq., but are now self-represented.

**Procedural History**

On July 13, 2015, the Town Zoning Administrator (ZA) sent a Voluntary Compliance Letter to the Stanions stating that a fence on the Stanions' property possibly violated provisions in the Regulations calling for a ten-foot setback from roadways, limiting fence height to 4.5 feet, and requiring front yard fences to have "open type construction."

On July 27, 2015, the ZA sent a notice of violation (NOV) to the Stanions stating that their fence violated the setback, height, and construction restrictions set out above, and further violated the Regulations because it was built without a permit.

Leesa Stanion appealed the NOV to the DRB on August 4, 2015.  The DRB held a hearing on October 6, 2015, and issued a decision upholding the violation on October 14, 2015.  The Stanions appealed that decision to the Environmental Division.[1]

---

[1] After the appeal was filed, this matter was delayed pending a vote on proposed amendments to the zoning regulations that might have eliminated the violation had they been adopted, and then delayed again due to the parties' health and scheduling complications.

1

**Scope of Review**

Our review on matters appealed to this Court is limited to issues raised in the Statement of Questions. See V.R.E.C.P. Rule 5(f) ("The appellant may not raise any question on the appeal not presented in the statement [of questions] as filed . . . .").

The Statement of Questions here asks:

1. Whether the fence is exempt from general fence regulations because it is on an operating farm.

2. Whether the evidence supports the DRB conclusion that the fence is not a farm structure.

3. Whether the evidence supports the DRB conclusion that the fence is not used for agricultural purposes.

4. and 5. Whether the Agency of Agriculture, Food, and Markets (AAFM) needs to determine whether the fence is part of agricultural practice and, if so, whether this appeal should be stayed pending a request to AAFM for a variance exempting the fence from municipal setback requirements.

6. Whether the evidence supports the conclusion that the fence was not built on the footprint of an earlier fence.

7. Whether the DRB decision was correct.

**Scope of Review**

In an on-the-record appeal, we defer to the DRB's factual findings that are supported by evidence on the record. See <u>Devers-Scott v. Office of Prof'l Regulation</u>, 2007 VT 4, ¶ 6, 181 Vt. 248. We generally then assess those facts to reach our own legal conclusions. See <u>In re Stowe Highlands Resort PUD to PRD Appl.</u>, 2009 VT 76, ¶ 7, 186 Vt. 568.

Apart from the record, our analysis also considers the DRB decision and the briefs submitted by the parties. <u>In re Saman ROW Approval</u>, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). Here, the Stanions filed an initial brief on March 27, 2017, the Town filed its brief on April 10, 2017, and the Stanions filed a reply brief on May 12, 2017.

We note that the Town initially filed a list of exhibits that make up the record, including photographs. The Town later notified the Court that the photographs had not been introduced at the DRB hearing and are not part of the record, and the parties agree in their briefs that this is the case. We therefore do not refer to or consider the photographs in rendering our decision.

On July 5, 2017, the Town supplemented the record by submitting a copy of the zoning regulations as they existed at the time the fence was constructed and the NOV was issued, and color copies of maps submitted during the DRB hearing that had originally been submitted to the Court only in black and white.

**Findings of Fact**

Instead of taking new evidence or determining the facts anew, we begin an on-the-record appeal by reviewing the facts set out by the DRB. See Stowe Highlands, 2009 VT 76, ¶ 7. The findings of fact must be separately stated in the DRB decision, and must "explicitly and concisely restate the underlying facts that support the decision." 24 V.S.A. § 1209(a) and (b). The findings of fact serve, in part, to provide "a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004 term) (unpublished mem.) (citation omitted). If we are unable to reach a conclusion because facts are missing, we are unable to "fill in the gaps." Id.

We affirm the DRB's factual findings if they are supported by substantial evidence in the record. See Stowe Highlands, 2009 VT 76, ¶ 7. Findings are supported by substantial evidence if the record contains relevant evidence that a "reasonable person could accept . . . as adequate" support for the DRB's factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)). Our review is deferential; we do not assess the credibility of witness testimony or reweigh conflicting evidence. Id.

We summarize the DRB's findings as follows. The Stanions own property at 181 West Hill Road in Montgomery, Vermont, which is in the Agricultural / Residential zoning district. While the Stanions operate a farm at this location, the fence is not a farm structure and is not used for agricultural purposes, but is instead used for privacy. The fence was not constructed on the footprint of the old fence. The fence is not ten feet away from the travelled portion of the road, and is 7.5 feet tall. The fence is a solid stockade fence. No permit was obtained for the fence.

## Discussion

We begin by noting that the Town bears the burden of proving an alleged zoning violation. In re Toor & Toor Living Trust NOV, No. 18-1-10 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Jan. 31, 2011) (Durkin, J.).

### I. Whether the fence is a farm structure that is exempt from zoning regulation

The Stanions' primary argument, as set out in their first three questions, is that the fence is a farm structure which is exempt from zoning regulation. While the Town has the burden of proving a zoning violation, if the landowner argues, as here, that the use is exempt from regulation, then the landowner carries the burden of proving the exemption. See Town of Sandgate v. Colehamer, 156 Vt. 77, 87 (1990).

Pursuant to 24 V.S.A. § 4413(d)(1)(A), municipal zoning regulations cannot regulate "required agricultural practices, including the construction of farm structures, as those practices are defined by the Secretary of Agriculture, Food and Markets."[2] The statute explains that

> [a]s used in this section, "farm structure" means a building, enclosure, or fence for housing livestock, raising horticultural or agronomic plants, or carrying out other practices associated with accepted agricultural or farming practices, including a silo, as "farming" is defined in 10 V.S.A. § 6001(22), but excludes a dwelling for human habitation.

---

[2] While the wording of this statute is somewhat confusing, we understand it to exempt from zoning regulations both (1) required agricultural practices as defined by the Agency of Agriculture, Food and Markets (AAFM); and (2) farm structures as defined in 24 V.S.A. § 4413(d)(2)(A). This is consistent with how the Vermont Supreme Court has read this statute. See In re Moore Accessory Structure Permit & Use, 2013 VT 54, ¶ 7, 194 Vt. 159. In our analysis, therefore, which focuses on whether the fence is a farm structure, we do not look to AAFM definitions of required agricultural practices.

<u>Id</u>. § 4413(d)(2)(A).  This statutory prohibition is included, nearly verbatim, in the zoning regulations.  Town of Montgomery Zoning Bylaws and Regulations, Amended and Updated 2005 (Regulations) § 4.11.  Title 24, § 6001(22) sets out a definition of farming that includes "the raising, feeding, or management of . . . bees."

Although § 4413(d) exempts farm structures from zoning regulations, it requires a person to notify the municipality of the intent to build a farm structure, and also requires compliance with setbacks approved by AAFM.  24 V.S.A. § 4413(d)(3).  AAFM regulations require farm structures to either comply with local setback requirements, or obtain a variance from AAFM.  Rules of the Agency of Agriculture, Food, and Markets, Rule 401, Code of Vt. Rules 2-3-401:9 (WL).

The Regulations further direct, in a section specific to fences, that "fences on operating farms are exempt from these regulations."  Regulations § 5.6.8.  There is some disagreement between the parties as to whether this applies to all fences on operating farms, or only to fences that are used in farming activities.

We construe zoning regulations to implement the purpose of those who drafted them. <u>In re Application of Lathrop Ltd. P'ship I</u>, 2015 VT 49, ¶ 22, 199 Vt. 19.  We begin by enforcing the plain language of the ordinance, if it is unambiguous.  <u>Id</u>.  Section 5.6.8 specifically exempts "fences on <u>operating</u> farms." Regulations § 5.6.8 (emphasis added). The exemption does not extend to inoperative, inactive farms.  This evidences an intent to exempt only those fences that are related to or involved in the activity of farming, and not to fences not used for farming, even if they are situated on a farm.  The focus is on the use of the structure (the fact that it is used in farming) rather than the nature of the structure itself (the fact that it is a fence) or the location of the structure (the fact that it is on a farm).

This interpretation is reinforced when we look to the regulations as a whole.  <u>Brisson Stone, LLC v. Town of Monkton</u>, 2016 VT 15, ¶ 21, 201 Vt. 286 ("We construe zoning regulations to give effect to the whole without being limited to a single sentence.") (citation omitted). Section 4.11 exempts fences and other structures associated with agricultural and farming practices.  Regulations § 4.11.  It does not exempt fences and other structures simply because they are located on a farm.  Again, the focus is on the use of the structure, not the location.

5

Reading §§ 4.11 and 5.6.8 together, we are further persuaded that § 5.6.8 does not create a blanket exemption for any fence that happens to be on a farm. Instead, we conclude that § 5.6.8 applies to fences that play some role in farming or agricultural activity or are associated with farming practice.

In brief, then, in order to demonstrate the fence is an exempt farm structure, the Stanions must show that the fence is used in association with farming.

In addition, we note that a fence may be used for more than one purpose. See Obolensky v. Trombley, 2015 VT 34, ¶¶ 21–25, 198 Vt. 401 (adopting the dominant-purpose test regarding Vermont's spite fence statute, which acknowledges that while a fence may be erected for more than one purpose—including privacy, or to delineate boundary lines—a fence violates the spite fence statute when the dominant purpose of the fence is to annoy another). Just because a fence is used to mark a boundary, or for privacy, does not mean that it cannot also be used in association for farming. We hold, however, that to be an exempt farm structure the use of the fence in association with farming must be one of the fence's primary uses. If the use in association with farming is incidental or de minimus, then the fence is not an exempt farm structure.

Whether a structure is a farm structure for purposes of zoning is a mixed question of law and fact. The party asserting that a structure is an exempt farm structure has the burden to present evidence demonstrating that the fence is used in association with farming, and that this is one of the fence's primary uses. The adjudicator must weigh that evidence and make factual findings based on the evidence regarding how the fence is used. If one of the fence's primary uses is in association with farming, the adjudicator must reach the legal conclusion that the fence is an exempt farm structure. If the fence is not used in association with farming, or if that use is de minimus or incidental, the adjudicator must conclude that the fence is not an exempt farm structure.

The DRB in this case found that the fence is being used as a privacy fence, and that it is not used for agricultural purposes or as a farm structure.

There is evidence on the record that the fence was erected for privacy purposes. Leesa Stanion testified that many people used to go over their old fence and through her land to

access a popular swimming hole, and the new fence serves, at least in part, to redirect this traffic. She also testified that the fence was intended in part to delineate the Stanion property from a neighboring property. Leesa Stanion also testified that the fence was designed to prevent cars from sliding off the road and onto her property.

Because the DRB's finding that the fence is used for privacy purposes is supported by evidence on the record, we uphold that finding. As explained above, however, this does not preclude the fence from also being used as a farm structure.

There is evidence on the record suggesting that the fence supports the Stanions' beekeeping activities. Leesa Stanion testified that the fence serves to direct bees flying from her hives above traffic, and that without a solid, tall fence, many of the bees are killed by vehicle traffic. She affirmed her attorney's assertion that beekeepers' management practices recommend solid, tall fences when hives are located close to roads. She also testified that the fence prevents the beehives from being hit by cars going off the road, and protects those walking to the swimming hole from being stung by bees.

There is no contravening evidence on the record that the fence does not serve a farming purpose. Nor did the DRB explain in its decision why it found that the fence is not being used for agricultural purposes and is not a farm structure. The findings of fact in the DRB's decision are therefore insufficient for us to determine whether its legal conclusion—that the fence is not an exempt farm structure—is correct. We therefore **REMAND** this issue to the DRB to develop additional findings of fact, and to collect additional evidence if necessary, to determine whether the fence is an exempt farm structure. Conservation Law Found. v. Burke, 162 Vt. 115, 128 (1993).

II. **Whether the fence complies with construction, height, setback, and permitting requirements**

If the fence is not an exempt farm structure, it must comply with various provisions of the zoning regulations. Because this is an enforcement action, the Town has the burden of proving that the fence does not comply.

Regulations § 5.6.5 requires fences to be of open type construction. Leesa Stanion acknowledged in her testimony that the fence is a solid and closed stockade fence. The DRB

finding that the fence is solid, and not an open type construction, is therefore supported by the record.  As such, if the fence is not an exempt farm structure, it violates Regulations § 5.6.5.

Regulations § 5.6.4 limits fences to a maximum of 4.5 feet tall.  The DRB found that the fence is 7.5 feet tall.  There is no evidence on the record to support this finding, apart from an indication by Leesa Stanion that the fence is "elevated."  The evidence on the record is insufficient to determine the height of the fence.  This issue is **REMANDED** to the DRB to develop additional findings of fact, and to collect additional evidence if necessary, to determine the height of the fence.

Regulations § 5.6.2 requires fences to be set back at least ten feet from the travelled portion of the road.  The DRB decision finds that the fence is within ten feet of the travelled portion of the road.  The only information on the record supporting this is a statement made by a DRB member.

Regulations § 5.16 requires a person to obtain a permit to build a structure.  Under Regulations § 1.8, a structure is defined to include fences, "except a . . . fence on an operating farm."  As explained above, we interpret this exception to apply only to fences used in association with farming.  While the DRB found that no permit was obtained for the fence, this finding is supported in the record only by a statement made by an unnamed person who also appears to be a DRB member or other town official.

DRB members are the decisionmakers in municipal matters, and they cannot base their findings on information that they themselves submit.  There are two main reasons for this.  First, basing a decision on information provided by DRB members generally violates due process standards.  Burch-Clay v. Taylor, 2015 VT 110, ¶¶ 34–35, 200 Vt. 166.

Second, information provided by DRB members is not evidence.  On-the-record review at the municipal level must follow the procedures set out in the Municipal Administrative Procedures Act (MAPA), which is at 24 V.S.A. § 1201–10.  24 V.S.A. § 4471(b).  Under MAPA, the Vermont Rules of Evidence generally apply, although "evidence not admissible under those rules may be admitted if it is of a type commonly relied upon by reasonably prudent people in the conduct of their affairs."  Id. § 1206(b).  Under MAPA and the Rules of Evidence, testimony by a witness can be evidence.  V.R.E. 701 et seq.; 24 V.S.A. § 1206.  A statement by an attorney

or a DRB member, or any other person who is not sworn in as a witness, is not evidence. When issuing a decision, findings of fact must "explicitly and concisely restate the underlying facts that support the decision," and must "be based exclusively on evidence" taken at the hearing. 24 V.S.A. § 1209(b).

Excluding statements by DRB members, then, there is insufficient evidence on the record to determine whether the fence is within ten feet of the travelled portion of the road or whether a permit was obtained. We therefore **REMAND** these issues to the DRB for additional fact finding regarding set back and permitting.[3]

### III.     Whether the fence was constructed on the same footprint as the previous fence

The Stanions further argue that the fence is exempt from regulation as an existing non-conforming structure.[4] Here, again, the Stanions carry the burden of proving that the fence is a nonconforming structure. Sandgate, 156 Vt. at 87.

A non-conforming structure is "a structure or part of a structure that does not conform to the present bylaws but was in conformance with all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws, including a structure improperly authorized as a result of error by the administrative officer." 24 V.S.A. § 4303(14); see also Regulations § 1.8.

The DRB decision makes no findings or conclusions regarding this issue. We therefore **REMAND** this question to the DRB to make factual findings to determine whether the Stanions' provided evidence that the old fence was a nonconforming structure.

Our legislature has limited the extent that municipalities can regulate nonconforming structures. 24 V.S.A. § 4412(7). Under the Regulations, a nonconforming structure cannot be "moved, enlarged, altered or extended without approval of the DRB," and cannot be restored after being damaged unless the restoration is within one year of the damage caused. Regulations §§ 5.11.2, 5.11.4. Normal maintenance and repair of nonconforming structures is allowed, provided that doing so does not increase the degree of nonconformity. Id. § 5.11.5.

---

[3] We note, again, that even if the fence is an exempt farm structure, it must comply with the Regulations' setback requirements unless the Stanions obtain a variance from AAFM. Rules of the Agency of Agriculture, Food, and Markets, Rule 401, Code of Vt. Rules 2-3-401:9 (WL).

[4] This argument is alluded to in Question 6, and elaborated in the brief the Stanions submitted to the DRB.

If the DRB determines that the earlier fence was a nonconforming structure then the Stanions were allowed to repair it under § 5.11.5, as long as it was not moved, enlarged, altered, or extended. If the fence was not a nonconforming structure, then § 5.11.5 does not exempt it from the height, construction, and setback requirements in the Regulations.

## Conclusion

Because of the lack of evidence on the record and insufficiency of findings, we are unable to rule on the DRB's conclusions. We therefore **REMAND** this matter to the DRB for further factfinding and analysis of the alleged violation consistent with this merits decision. If necessary, the DRB may reopen the hearing.

This concludes this matter. A Judgment Order is issued concurrently with this decision.

**Electronically signed on July 18, 2017 at 9:30 AM pursuant to V.R.E.F. 7(d).**

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

10